**No. 24-50800**
**consolidated with 24-50829**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

MICHAEL FULLERTON,
Defendant-Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION
No. 1:21-CR-00216-RP-1

---

**OPENING BRIEF OF DEFENDANT-APPELLANT**
**MICHAEL FULLERTON**

---

Susannah E. Prucka
Prucka Law Firm
3204 Sunburst Drive
Midland, Texas 79707
(432) 303-1509
susannah@pruckalawfirm.com

Attorney for Defendant-Appellant
Michael Fullerton

## <u>CERTIFICATE OF INTERESTED PERSONS</u>
**United States v. Michael Fullerton  No. 24-50800**

Undersigned counsel of record certifies that the following individuals listed below have an interest in the outcome of these proceedings:

1. **The Honorable Dustin M. Howell,** United States Magistrate Judge;

2. **The Honorable Susan Hightower,** United States Magistrate Judge;

3. **The Honorable Mark Lane,** United States Magistrate Judge;

4. **The Honorable Robert L. Pitman**, United States District Judge;

5. **Michael Fullerton**, Defendant-Appellant;

6. **Susannah E. Prucka**, Attorney, who currently represents Defendant-Appellant before this Court;

7. **Jon Evans** and **James R. Young**, Attorneys, who represented Defendant-Appellant in the District Court;

8. **Justin R. Simmons**, U.S. Attorney - Western District of Texas;

9. **G. Karthink Srinivasan** and **Keith M. Henneke**, Assistant U.S. Attorneys, who represented Plaintiff-Appellee below;

10. **Stephanie Frederique Cagniart** and **Zachary C. Richter**, Assistant U.S. Attorneys, who represents Plaintiff-Appellee in this Court;

This certificate is made to allow the judges of this Court to evaluate whether there are possible disqualification or recusal issues.

By: /s/ Susannah E. Prucka
Susannah E. Prucka
Attorney for Defendant-Appellant

i

## **STATEMENT REGARDING ORAL ARGUMENT**

Counsel for Defendant-Appellant in the above-styled and numbered cause does not request oral argument. It is the position of Appellant that the issues presented may be appropriately resolved on the basis of the briefs submitted to the Court. In the event that oral argument is granted, Appellant is prepared to attend at the Court's pleasure.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ............................................... i

STATEMENT REGARDING ORAL ARGUMENT .................................... ii

TABLE OF CONTENTS .................................................................... iii

TABLE OF AUTHORITIES ................................................................ iv

STATEMENT OF JURISDICTION .......................................................... 1

STATEMENT OF THE ISSUES ............................................................. 2

STATEMENT OF THE CASE ............................................................. 3

SUMMARY OF THE ARGUMENT .........................................................25

ARGUMENT....................................................................................26

   I. The district court clearly erred in finding that the sophisticated means enhancement of § 2B1.1(b)(10)(C) applied in this case............................26

   II. The district court clearly erred in finding that the sophisticated means enhancement of § 2S1.1(b)(3) applied in this case. ..................................30

   III. The district court erred in enhancing Fullerton's sentence based on an erroneous finding that Fullerton was a leader or organizer of a criminal activity involving five or more participants under § 3B1.1(a). .................34

   IV. The enhancement for obstruction of justice was not supported by an adequate independent finding by the district court that Fullerton committed perjury..............................................................................37

CONCLUSION .................................................................................41

CERTIFICATE OF SERVICE.................................................................42

CERTIFICATE OF COMPLIANCE..........................................................43

# TABLE OF AUTHORITIES

**Page**

**Cases**

*United States v. Charroux*, 3 F.3d 827 (5th Cir. 1993) ..................26, passim

*United States v. Cisneros*, 414 Fed. Appx. 696 (5th Cir. 2011) ...................37

*United States v. Clements*, 73 F.3d 1330 (5th Cir. 1996)...............26, passim

*United States v. Como*, 53 F.3d 87 (5th Cir. 1995)....................................38

*United States v. Conner*, 537 F.3d 480 (5th Cir.2008)...............................28

*United States v. Dunnigan*, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) ......................................................................................................38

*United States v. Edwards*, 303 F.3d 606 (5th Cir. 2002) ............................37

*United States v. Gentry*, 941 F.3d 767 (5th Cir. 2019) ...............................35

*United States v. Humphrey*, 7 F.3d 1186 (5th Cir. 1993)............................40

*United States v. Huskey*, 137 F.3d 283 (5th Cir. 1998)...............................30

*United States v. Ibarra-Luna*, 628 F.3d 712 (5th Cir. 2010)..................29, 30

*United States v. Lewis*, 476 F.3d 369 (5th Cir. 2007) .................................37

*United States v. Martinez*, 131 F.4th 294 (5th Cir. 2025) ...........................35

*United States v. Mehmood*, 742 F. App'x 928 (6th Cir. 2018).....................32

*United States v. Reyes*, 781 F. App'x 965 (11th Cir. 2019) ........................32

*United States v. Rubashkin*, 718 F. Supp. 2d 953 (N.D. Iowa 2010)............32

iv

**Page**

*United States v. Storm*, 36 F.3d 1289 (5th Cir.1994) .......................38, passim

*United States v. Valdez*, 726 F.3d 684 (5th Cir. 2013)....................27, passim

*United States v. Wright*, 496 F.3d 371 (5th Cir. 2007) ...............................28

*United States v. Zuniga*, 720 F.3d 587 (5th Cir. 2013) ...................26, passim

**Statutes**

18 U.S.C. § 1028A..............................................................................16, passim

18 U.S.C. § 1341..........................................................................................20

18 U.S.C. § 1343..............................................................................16, passim

18 U.S.C. § 1344..............................................................................16, passim

18 U.S.C. § 1349..............................................................................16, passim

18 U.S.C. § 1956..............................................................................16, passim

18 U.S.C. § 1957..............................................................................16, passim

18 U.S.C. § 3013..........................................................................................21

18 U.S.C. § 3571..........................................................................................21

18 U.S.C. § 3583(b)(2) ................................................................................21

18 U.S.C. § 3583(b)(3) ................................................................................21

18 U.S.C. § 3742......................................................................................... 1

v

**Page**

28 U.S.C. § 1291.............................................................................. 1

**Federal Rules of Appellate Procedure**

4(b)(1)(A) ...................................................................................... 1

**United States Sentencing Guidelines**

2B1.1(a)(1) .....................................................................................19

2B1.1(b)(10)(C)...................................................................19, passim

2B1.1(b)(10)(C), Application Note 9 .......................................................27

2B1.6 ...........................................................................................20

2S1.1(a)(1).....................................................................................19

2S1.1(b)(2)(B) .................................................................................19

2S1.1(b)(3) ..........................................................................19, passim

2S1.1, Application Note 5.....................................................................32

3B1.1(a)...............................................................................19, passim

3B1.1, Application Note 1 ...................................................................35

3B1.1, Application Note 4 ...................................................................35

3C1.1 ..................................................................................19, passim

3D1.2(d) ........................................................................................19

**Page**

5D1.2(a)(1) ........................................................................21

5D1.2(a)(2) ........................................................................21

5D1.2(a)(3) ........................................................................21

## STATEMENT OF JURISDICTION

Jurisdiction of this Court is invoked under 28 U.S.C. § 1291 as an appeal from a final judgment of conviction and sentence that was pronounced on October 4, 2024, and filed on October 7, 2024, in the United States District Court for the Western District of Texas, Austin Division, and under 18 U.S.C. § 3742, as an appeal of a sentence imposed under the Sentencing Reform Act of 1984. ROA.879-886, 931-1022.

Notice of appeal was timely filed on October 4, 2024, in accordance with Rule 4(b)(1)(A) of the Federal Rules of Appellate Procedure. ROA.878.

## STATEMENT OF THE ISSUES

I. Did the district court clearly err in finding that the sophisticated means enhancement of § 2B1.1(b)(10)(C) applied in this case?

II. Did the district court clearly err in finding that the sophisticated means enhancement of § 2S1.1(b)(3) applied in this case?

III. Did the district court err in enhancing Fullerton's sentence based on an erroneous finding that he was a leader or organizer of a criminal activity involving five or more participants under § 3B1.1(a)?

IV. Was the enhancement for obstruction of justice under § 3C1.1 supported by an adequate independent finding by the district court that Fullerton committed perjury?

## STATEMENT OF THE CASE

Appellant Michael Fullerton agreed to the following factual basis:

This case is a Paycheck Protection Program ("PPP") fraud case. Beginning as early as April 2020 and continuing until on or about March 1, 2021, in the Western District of Texas and elsewhere, DEFENDANT Michael Fullerton knowingly and intentionally conspired and agreed with one or more individuals , including David Scott Starkes and Joseph Robles, to commit bank and wire fraud in violation of, committed bank and wire fraud under 18 U.S.C. §§ 1 343-1 344, conspired and agreed with one or more individuals , including David Scott Starkes and Joseph Robles, to launder money obtained from PPP fraud in violation of 18 U.S.C. § 1956, engaged in monetary transactions in criminally derived property in violation of 18 U.S.C. § 1957, and used the identities of other persons without lawful activity during and in relation to his commission of bank and wire fraud in violation of 18 U.S.C. § 1028A. DEFENDANT or his coconspirators submitted at least five false and fraudulent PPP loan applications for a total of over $3 million. Of those applications, at least four were funded and DEFENDANT and his coconspirators received at least $2.4 million in PPP funds. DEFENDANT and his coconspirators used those funds to, among other things, attempt to start a business in Oklahoma consisting of a marijuana grow and dispensary, a bar and grill, and an auto/boat repair shop. DEFENDANT and his coconspirators also used the funds to buy a semi-truck motor home, Rolex watches, a Corvette, and a boat, among other expenditures.

DEFENDANT has owned and operated several businesses. However, he and his wife, Tiffany Fullerton, declared bankruptcy on December 22, 2017. The bankruptcy proceeding was still pending in May 2020. One of the businesses that DEFENDANT had was called Georgetown Collision Center. Beginning in around July 2018, DEFENDANT partnered with Mr. Starkes on Georgetown CollisionCenter. Mr. Starkes operated under the business name Starx Investment Holdings.

Joseph Robles was an employee of the Georgetown Collision Center.

In the spring of 2020, due to the economic difficulty caused by the COVID-19 pandemic, DEFENDANT and Starkes decided to apply for a PPP loan for Starx Investment Holdings to help with the costs of operating Georgetown Collision. DEFENDANT and an employee, T.G., entered false and fraudulent information into QuickBooks and EZ Checks in order to generate false tax records like W-2s, W-3s, Forms 940, and Forms 941, and false employment reports, to support at least one PPP loan application. DEFENDANT knew this information was false and fraudulent and knew it would be submitted with at least one PPP loan application.

DEFENDANT and his coconspirators submitted at least five additional false and fraudulent PPP loan applications. On April 29, 2020, DEFENDANT submitted and transmitted or caused to be submitted and transmitted a PPP loan application via the internet to Celtic Bank, which is a financial institution located in Salt Lake City, Utah, for $259,134 in the name of Fullerton Consulting Group, LLC. Fullerton Consulting Group, LLC was a business name previously used by DEFENDANT, but was not an operating business in 2019 or 2020. It was listed by the Fullertons in their bankruptcy disclosures as a "no asset" business. The loan application purported to have been submitted by DEFENDANT. The IP address from which the loan application was submitted was assigned to Georgetown Collision Center, which is in the Western District of Texas. The loan was funded on May 1, 2020.

On May 14, 2020, DEFENDANT submitted and transmitted or caused to be submitted and transmitted a PPP loan application via the internet to Celtic Bank, which is a financial institution located in Salt Lake City, Utah, for $500,000 in the name of FCG Automotive & Collision, LLC. FCG Automotive & Collision, LLC was a business name previously used by DEFENDANT, but was not an operating business in 2019 or 2020. It was listed by the Fullertons in their bankruptcy disclosures as a "no asset" business. The loan application

4

purported to have been submitted by Tiffany Fullerton. The IP address from which the loan application was submitted was assigned to Georgetown Collision Center, which is in the Western District of Texas. The loan was funded on May 18, 2020.

On May 28, 2020, DEFENDANT submitted and transmitted or caused to be submitted and transmitted a PPP loan application via the internet to Celtic Bank, which is a financial institution located in Salt Lake City, Utah, for $765,125 in the name of MTF Racing, LLC. MTF Racing, LLC was a business name previously used by DEFENDANT, but was not an operating business in 2019 or 2020. It was not listed by the Fullertons in their bankruptcy disclosures. The loan application purported to have been submitted by Joseph Robles. Mr. Robles agreed with DEFENDANT to have his identity used to apply for fraudulent PPP loans in exchange for approximately $100,000. This loan was flagged due to the MTF Racing EIN number having been generated after the February 15, 2020 requirement for PPP loan applicants. This loan was NOT funded.

On June 9, 2020, DEFENDANT submitted and transmitted or caused to be submitted and transmitted a PPP loan application via the internet to Customers Bank, which is a financial institution, for $834,200 in the name of MTF Racing, LLC. The loan application purported to have been submitted by Joseph Robles. The IP address from which the loan application was submitted was assigned to Georgetown Collision Center, which is in the Western District of Texas. The loan was funded on June 24, 2020.

On July 9, 2020, DEFENDANT submitted and transmitted or caused to be submitted and transmitted a PPP loan application via the internet to Cross River Bank, a financial institution, for $834,292.11 in the name of MTF Racing, LLC. The loan application purported to have been submitted by Joseph Robles. The IP address from which the loan application was submitted was assigned to Georgetown Collision Center, which is in the Western District of Texas. The loan was funded on July 13, 2020.

5

In order to receive the PPP funds related to the MTF Racing applications, DEFENDANT instructed Joseph Robles to open a business account with Chase Bank. DEFENDANT supplied Robles with the paperwork necessary for opening the account. Robles' first attempt to open the bank account was unsuccessful. On his second attempt, Robles successfully opened a Chase bank business account for MTF Racing, falsely claiming to be the president of MTF Racing.

After the PPP funds were deposited into the MTF Racing Chase bank account, the State of Texas placed a hold on the account due to unpaid child support owed by Robles. DEFENDANT and Starkes discussed the hold and made efforts to have it lifted. DEFENDANT had Robles fly to Tulsa, Oklahoma, where DEFENDANT picked Robles up from the airport. They drove to a Chase bank where Robles entered the bank and withdrew $1,115,000 in two cashier's checks, one for $1 million and one for $ 115,000. All three then drove to another bank where the $115,000 cashier's check was deposited in order to purchase a totorhome.

The loan applications submitted or caused to be submitted by DEFENDANT were all fraudulent. They were submitted as part of a scheme and artifice to defraud financial institutions and to use wire communication via the internet to obtain money or property by means of false, misleading, and fraudulent pretenses, representations, promises, and omissions of material facts, in violation of 18 U.S.C. § 1349 (Conspiracy to Commit Fraud), 18 U.S.C. § 1344 (Bank Fraud), and 18 U.S.C. § 1343 (Wire Fraud). The loan applications were false and fraudulent in the following ways:

• The employees listed in the fraudulent PPP loan applications were employees of Georgetown Collision, not the entities applying for the loans. Multiple employees were listed in every one of the loan applications. Several employees that were listed for every loan application were interviewed as part of the investigation and confirmed that they worked for Georgetown Collision and that they did not receive the

6

compensation reported for them from the other entities (Fullerton Consulting Group, FCG Automotive and Collision, and MTF Racing). DEFENDANT used the identities of EMPLOYEES 1-6, specifically their names and Social Security numbers, without lawful authority during and in relation to bank and wire fraud in violation of 18 U.S.C. § 1028A, as described in **Count 11 of the Third Superseding Indictment.** EMPLOYEES 1-6 did not know their identities were being used in the fraudulent PPP loan applications and did not give permission for their identities to be used. The use of these identities in the applications furthered DEFENDANT's bank and wire fraud and conspiracy schemes because the amount of the loans DEFENDANT could request was limited by, among other things, the salaries of employees that the application was purportedly to cover, so by including EMPLOYEES 1-6 in the applications DEFENDANT was able to seek and receive a higher amount of fraudulent money. DEFENDANT knew that EMPLOYEES 1-6 were actual persons.

• The IRS and State of Texas have no record of Fullerton Consulting Group, FCG Automotive and Collision, and MTF Racing submitting the tax forms or payments claimed in the PPP loan applications. These documents are fraudulent.

• The EIN for MTF Racing was not obtained until May 15, 2020. The application for the EIN was submitted from the same IP address as 4 of the 5 fraudulent PPP loan applications, which is associated with the physical address for Georgetown Collision. The putative applicant for the EIN was C.S., Mrs. Fullerton's father. C.S. had no knowledge of applying for the EIN, any ownership interest in MTF Racing, or any affiliation with it.

• The banking records submitted for each of the fraudulent PPP loans were falsified. The records

7

submitted claim to be from each business entity, but they are in fact falsified copies of the Starx Investment Holdings banking records, with the names and account numbers changed. In several cases the submitted banking records are clearly falsified because the bank accounts did not exist for the time period claimed - they were not opened until AFTER the claimed time period.

• The Fullerton's bankruptcy records show that Fullerton Consulting Group, FCG Automotive and Collision, and MTF Racing were not active businesses. Their bankruptcy filings list Fullerton Consulting Group and FCG Automotive and Collision as "no asset LLCs" and do not list MTF Racing at all.

• The Texas Secretary of State records show that FCG Automotive & Consulting, LLC forfeit its charter, certificate, or registration on January 26, 2018 due to failure to pay franchise tax. On May 11, 2020, the company applied for reinstatement. The application bears the signature of Mrs. Fullerton.

• The Texas Secretary of State records show that MTF Racing, LLC forfeit its charter, certificate, or registration on January 26, 2018 for failure to pay franchise tax. On May 21, 2020, the company applied for reinstatement. The application was signed by Mr. Robles.

• The fraudulent loan applications included documents purportedly from an attorney, F. William Johnson, from New York. There were also email communications between the banks and this attorney. However, no such attorney exists. He was a fake persona created and used by the conspiracy.

• The bulk of the funds received were not intended for the claimed purpose but rather used to develop a new business in Oklahoma, a marijuana grow and

8

dispensary, bar and grill, and auto/boat repair shop, and used for multiple personal expenditures as detailed below.

• The fraudulent PPP applications included falsified tax records purportedly prepared by S.S., a certified public accountant. The inclusion of S.S. on the tax records added legitimacy to the documents and the application as a whole, making it less likely that the reviewing banks would question the authenticity of the records and thus more likely that the applications would be approved. DEFENDANT used S.S.'s name, purported signature, and tax ID number (that was off by a single digit) without S.S.'s knowledge or permission and without lawful authority. S.S. had never performed any work for Fullerton Consulting Group, FCG Automotive and Collision, MTF Racing, or the Fullerton's individually and did not complete the forms DEFENDANT purported S.S. completed. DEFENDANT obtained S.S.'s personal information because S.S. did perform some work for Starx Investment Holdings, and DEFENDANT knew that S.S. was an actual person. DEFENDANT used the identity of S.S., specifically his name and purported signature, without lawful authority during and in relation to bank and wire fraud in violation of 18 U.S.C. § 1028A, as described in Count 10 of the Third Superseding Indictment.

Sometime during 2020, DEFENDANT and his coconspirators agreed to use the fraudulently obtained PPP funds for a new business venture in Oklahoma. DEFENDANT and Mrs. Fullerton moved to Oklahoma. Several employees from Georgetown Collision Center, including Mr. Robles, followed the Fullertons to Oklahoma to work on the business. PPP funds were used to buy land, buy building materials and equipment, and pay employees to work on the Oklahoma business.

From in or about April 2020 until on or about July 13, 2020, the DEFENDANT knowingly and intentionally conspired

9

and agreed with one or more individuals to commit one or more offenses against the United States, namely: (a) Bank Fraud, in violation of 18 U.S.C. § 1344, that is knowingly executing, or attempting to execute, a scheme and artifice to obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations, promises, and omissions of material facts, namely, a scheme to acquire PPP funds as described herein and (b) Wire Fraud, in violation of 18 U.S.C. § 1343, that is, having devised and having intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and omissions of material facts, namely, a scheme to acquire SBA PPP funds as described above, for the purpose of executing the scheme and artifice, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate commerce certain writings, signs, signals, pictures, and sounds as described herein, as described in Count 1 of the Third Superseding Indictment.

From in or about April 2020 until on or about August 1, 2020, the DEFENDANT knowingly combined, conspired, and agreed with one or more individuals to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Conspiracy to Commit Fraud (18 U.S.C. § 1349), Bank Fraud (18 U.S.C. § 1344), and Wire Fraud (18 U.S.C. § 1343), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i), as described in Count 6 of the Third Superseding Indictment. Specifically, with regard to the $1 million cashier's check described above, the check was payable to Fullerton Consulting Group. DEFENDANT deposited it into

10

a First Bank account for that company that was opened the day before the check was deposited, July 31, 2020. Multiple checks from this account were used to purchase the land for the business described above. This account was used to purchase 2 vehicles for $18,440 in August 2020, and $237,985 was transferred to an account for Grand Lakes Wellness Center, LLC, one of the business names for the Oklahoma business described above. These and other transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and DEFENDANT knew the funds were from fraudulently obtained PPP loans.

For example, on May 18, 2020, the $500,000 PPP loan for FCG Automotive & Collision was paid to a JPMC bank account opened in Mrs. Fullerton's personal name. That same day, DEFENDANT instructed Mrs. Fullerton to open a new JPMC account in the name of FCG Automotive & Collision, which she did, and further instructed Mrs. Fullerton to transfer the full $500,000 from her personal account to the new account, which she also did. On May 27 and July 8, 2020, Mrs. Fullerton, at DEFENDANT's request, made two transfers from this new account to the Fullerton Consulting Group Radius Bank account in the amount of $25,000 and $35,236.33, respectively. On several occasions, Mrs. Fullerton, at DEFENDANT's instruction, would obtain cashier's checks from the bank, then later return the check for another cashier's check and cash. These transfers were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and DEFENDANT knew the funds were from fraudulently obtained PPP loans.

On July 30, 2020, a cashier's check for $115,000 of fraudulently obtained funds was obtained from the MTF Racing, LLC Chase Bank account ending in 2263. This check was used by DEFENDANT in and affecting commerce to purchase a semi-truck motorhome (also known as a "totorhome") from JJS Mechanical Inc. and J.S., as established and confirmed by records obtained from JJS Mechanical Inc. and J .S. DEFENDANT admits that he knowingly engaged in this

11

monetary transaction using criminally derived property that was derived from specified unlawful activity, specifically Conspiracy to Commit Fraud (18 U.S.C. § 1349), Bank Fraud (18 U.S.C. § 1344), and Wire Fraud (18 U.S.C. § 1343), as described in Count 7 of the Third Superseding Indictment.

On May 27, 2020, $20,340 of fraudulently obtained funds were wired to the bank account of CME International, d/b/a Bob's Watches. This transfer was for DEFENDANT's purchase of two Rolex watches, as established and confirmed by receipts and emails obtained from Bob's Watches. DEFENDANT admits that he knowingly engaged in this monetary transaction using criminally derived property that was derived from specified unlawful. activity, specifically Conspiracy to Commit Fraud (18 U.S.C. § 1349), Bank Fraud (18 U.S.C. § 1344), and Wire Fraud (18 U.S.C. § 1343), as described in Count 8 of the Third Superseding Indictment.

On May 20, 2020, $21,688 of fraudulently obtained funds were wired to the bank account of Boats of Dallas to purchase a 1983 Unitlite 36-foot double cabin boat, named "'Breakfast at Tiffany's." The boat was purchased and titled in both DEFENDANT and Mrs. Fullerton's names. DEFENDANT admits that he knowingly engaged in this monetary transaction using criminally derived property that was derived from specified unlawful activity, specifically Conspiracy to Commit Fraud (18 U.S.C. § 1349), Bank Fraud (18 U.S.C. § 1344), and Wire Fraud (18 U.S.C. § 1343), as described in Count 9 of the Third Superseding Indictment.

Tax forms for the fraudulent loans were purportedly prepared and signed by S.S., a CPA from New York. S.S. never did any work for DEFENDANT or the businesses represented in the Conspiracy to Commit Wire Fraud and Bank Fraud (18 U.S.C. § 1349), Bank Fraud (18 U.S.C. § 1344), and Wire Fraud (18 U.S.C. § 1343), and knew the means of identification belonged to another actual person, as described in Count 10 of the Third Superseding Indictment.

12

During and in furtherance of the conspiracy, DEFENDANT communicated with Mr. Starkes via text message. Those text messages establish DEFENDANT's knowing participation in the conspiracy, and include, but are not limited, to the following:

• On June 22, 2020, DEFENDANT texted Mr. Starkes, "I have been at my house this morning working on the PPP bullshit."

• On July 27, 2020, DEFENDANT texted Mr. Starkes, "We get a second round of ppp so I'm supporting Covid ... I guess we can figure out what to do with another million or two." Mr. Starkes responded, "Retire," DEFENDANT responded, "Loi," and Mr. Starkes responded, "Lmfao ... Bigger boat."

• On July 28, 2020, Mr. Starkes and DEFENDANT had the following exchange:

o DEFENDANT: "Joseph got his bank account levied for child support yesterday so I had Ashley take him a check for 1000. She said you had sent Joseph home and you had the check. When I did the MTF account for the deposit I had Tiff take him to Chase an[ d] open a business account under MTF so I could have a place to deposit the money. I was going to transfer for it to BB&T to the account I opened in line (sic) under MTF using Tiff and her dad. But after you and I talked I just left it all in Chase. Joseph has no idea how much money is in there nor does he have on line access or a debit card or checks or anything. But he could go to chase and make a withdrawal if he got pissed. I don't know what happened at work but firing him right now would put all the money at risk. I just wired 50k to BB&T. That's all it would let me wire in one day. I will Start moving all the money to BB&T but it's going to take a few weeks to move a million plus."

13

o Mr. Starkes: "I didnt (sic) fire him i sent him home for no show yesterday I told him I would talk to you when you got back he told me he didn't think he had to let me know he wasn't going going (sic) to be here so do whatever you want to do apparently what I think doesn't matter."

o DEFENDANT: "I think you missed the whole point of my text. I don't give a fuck about Joseph. I'm concerned about the money."

o Mr. Starkes: "I get that part that why I said do whatever you want to do I didn't miss any point if you need him here today ill (sic) get him back up here."

• On July 29, 2020, Mr. Starkes texted DEFENDANT, "Well I'm in Vegas with the check book so by the end of the day it might not be straight...lo!." DEFENDANT responded, "Have fun More PPP coming in a few weeks."

• On July 30, 2020, DEFENDANT texted Mr. Starkes, "I've got it worked out. It's a cluster fuck because of the computer IP address pinging Tulsa. Walter, our new attorney, is writing an affidavit that Joseph will sign stating the business isn't his and he has no interest in it. That will only be used if there is a child support levy which I don't believe there is. He is also writing up a new operating agreement showing that MTF Racing is me and Tiffany. He will have all that done by 10am. I got Joseph a flight here at 6am and we Tiffany (sic) will pick him up and take him straight to Chase. I will Uber over as I will be here at the hotel dealing with Walter on the documents. We are going to walk in like we own the place. Get the fraud hold lifted. Once that's done transfer all the money to BBT. We are going to take all the documents and explain that Chase fucked up when they opened the account and that Joseph was never the owner, just a signer.

14

That will explain why I am doing all the talking and Joseph is just sitting there with his mouth fucking shut. Once the hold is lifted I will tell them that it is my money and I want the account closed immediately because they fucked up. But to play this card Joseph needs to be here otherwise it will look sketchy with the computer pinging Tulsa. All that is how Walter said to play it so that's what we are going to do. Once the money is wired and the account is closed we are Texas bound. I will let you know once it's done."

• On July 30, 2020, DEFENDANT texted Mr. Starkes, "Well after two hours I believe that the hold is lifted but I am not I 00% sure. They say that it is lifted and I can now see online banking so Tiffany and Joseph are headed inside the bank and I'll know very shortly. They will not let any wire transfers happen they said we have to get cashiers checks. So that is what we are doing. I will keep you posted."

• On September 3, 2020, Mr. Starkes and DEFENDANT had the following exchange:

o DEFENDANT: "What are you really do is tell everyone to go get fucked right now and you'll make payroll at the end of the day because I need a few hours to get everything together and I'm dealing with this fucking PPP fraud shit right now so I don't give a fuck about Toni and I would rather you not pay anybody any money until the end of the day when I can sit down and look at things."

o Mr. Starkes: "No problem."

o DEFENDANT: "I will call you after I talk to Walter I'm waiting on his call back now but I can tell you is I don't know how this is gonna work out but Joe Turner maybe getting another vacation home because you me and Tiffany may need him Checks were written out of MTF to all of us plus

15

Georgetown Collision, FCG, etc. Right now I'm trying to do damage control and limit this to MTF ... So the big bigger picture right now is not Toni's paycheck or anyone else's."

o Mr. Starkes: "Gotcha."

During the time period that the DEFENDANT was a member of the money laundering conspiracy, the amount of attempted loss connected to the conspiracy was at least $3 million. The amount of actual loss that was received into bank accounts controlled directly or indirectly by DEFENDANT was at least $2.4 million. DEFENDANT or his coconspirators dissipated or otherwise disposed of the criminal proceeds, making such proceeds unavailable for forfeiture purposes.

ROA.485-497.

On October 27, 2021, Michael Fullerton was charged in an 11-count

Information filed in the Western District of Texas-Austin Division:

Count One: Conspiracy to Commit Wire and Bank Fraud, in violation of 18 U.S.C. § 1349.

Counts Two and Three: Bank Fraud, in violation of 18 U.S.C. § 1344.

Counts Four, Five and Six:  Wire Fraud, in violation of 18 U.S.C. § 1343.

Count Seven: Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956.

Counts Eight, Nine and Ten: Engaging in Monetary Transactions in Criminally Derived Property, in violation of 18 U.S.C. § 1957.

Count Eleven: Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A.

ROA.24-35

16

On November 16, 2021, Michael Fullerton and Joseph Robles were charged in a ten-count Superseding Indictment filed in the Western District of Texas-Austin Division:

Count One: Conspiracy to Commit Wire and Bank Fraud, in violation of 18 U.S.C. § 1349 (Michael Fullerton and Joseph Robles).

Counts Two and Three:  Bank Fraud, in violation of 18 U.S.C. § 1344 (Michael Fullerton and Joseph Robles).

Counts Four and Five: Wire Fraud, in violation of 18 U.S.C. § 1343 (Michael Fullerton).

Count Six: Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956 (Michael Fullerton and Joseph Robles).

Seven, Eight and Nine: Engaging in Monetary Transactions in Criminally Derived Property, in violation of 18 U.S.C. § 1957 (Michael Fullerton).

 Count Ten: Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Michael Fullerton).

ROA.49-61.

A ten-count Second Superseding Indictment was later filed on August 16, 2022 to include other co-defendants, including Tiffany Fullerton and David Scott Starkes in some of the counts. ROA.98-110. A forfeiture notice was included in the Second Superseding Indictment. ROA.109-110.

17

On July 18, 2023, Fullerton and his wife Tiffany Fullerton were charged in an 11-count Third Superseding Indictment filed in the Western District of Texas – Austin Division:

Count One: Conspiracy to Commit Wire and Bank Fraud, in violation of 18 U.S.C. § 1349 (Michael Fullerton and Tiffany Fullerton).

Counts Two and Three: Bank Fraud, in violation of 18 U.S.C. § 1344 (Michael Fullerton).

Counts Four and Five: Wire Fraud, in violation of 18 U.S.C. § 1343 (Michael Fullerton).

Count Six: Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956 (Michael Fullerton and Tiffany Fullerton).

Seven, Eight and Nine: Engaging in Monetary Transactions in Criminally Derived Property, in violation of 18 U.S.C. § 1957 (Michael Fullerton).

Counts Ten and Eleven: Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Michael Fullerton).

ROA.282-294. A forfeiture notice was included in the Second Superseding Indictment. ROA.293-294.

On March 26, 2024, Fullerton appeared before the Honorable Dustin M. Howell, United States Magistrate Judge, Western District of Texas, Austin Division, and pleaded guilty to the 11 counts of the Third Superseding Indictment. ROA.911, 931, 480. There was no plea agreement. That same day, the magistrate judge issued a Report and Recommendation of the United

18

States Magistrate Judge, which recommended that Fullerton's plea of guilty be accepted and a Final Judgment of guilt be entered against Fullerton. ROA.482-483.

On March 27, 2024, United States District Judge Robert Pitman, Western District of Texas, Austin Division issued an order accepting Fullerton's plea of guilty. ROA.500.

On or about May 31, 2024, a presentence investigation report was completed. ROA.1023-1070.

The PSR recommended that Counts 1 through 9 be grouped for purposes of guideline calculations. ROA.1038, citing USSG § 3D1.2(d). The PSR recommended a total offense level of 37. ROA.1039. In devising this level, the PSR recommended a base level of 7. ROA.1038, citing §§ 2S1.1(a)(1) & 2B1.1(a)(1). It also recommended an increase of 30 levels due to specific offense characteristics and two adjustments. ROA.1038-1039, citing USSG §§ 2B1.1 (18-level increase for amount of total intended loss between $3.5 million and $9.5 million), 2B1.1(b)(10)(C) (two-level increase for offense involving sophisticated means), 2S1.1(b)(3)(A), (B) (two-level increase for a conviction under 18 U.S.C. § 1956 and the offense otherwise involved sophisticated laundering), 2S1.1(b)(2)(B) (two-level increase because defendant was convicted of 18 U.S.C. § 1956), 3B1.1(a) (four-level

19

increase because defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive), & 3C1.1 (two-level increase for obstruction of justice). No acceptance-of-responsibility-points were offered. ROA.1039.

Fullerton was placed in Criminal History Category III based on a criminal history score of six. ROA.1052.

Based upon a total offense level of 37 and a criminal history category of III, the Guidelines established an advisory imprisonment range of 262 to 327 months for Count 1 through 9. ROA.1066.

Counts 10 and 11 require terms of imprisonment defined by the statute – 2 years per count. ROA.1039, citing USSG § 2B1.6 and 18 U.S.C. § 1028A(a)(1).

The statutory maximums terms of imprisonment for the counts are as follows: Counts 1, 2 and 3: 30 years (360 months). ROA.1065, citing 18 U.S.C. §§ 1341, 1344.  Counts 4 and 5: 20 years (240 months). ROA.1065, citing 18 U.S.C. § 1343. Count 6: 20 years (240 months). ROA.1065, citing 18 U.S.C. § 1956. Counts 7, 8, and 9: 10 years (120 months). ROA.1065, citing 18 U.S.C. § 1957. Counts 10 and 11: 2 years (24 months). ROA.1065, citing 18 U.S.C. § 1028A(b)(4).

The PSR put forth a suggested supervised release range for Counts 1, 2 and 3 of two years to five years with a statutory maximum of 3 years. ROA.1066, citing USSG § 5D1.2(a)(1) & 18 U.S.C. § 3583(b)(2). Counts 4 through 9 had a suggested supervised release range of one year to three years. ROA.1066, citing USSG § 5D1.2(a)(2) & 18 U.S.C. § 3583(b)(2). Counts 10 and 11 had a suggested supervised release range of one year. ROA.1066, citing USSG § 5D1.2(a)(3) & 18 U.S.C. § 3583(b)(3) .

The suggested fine range for Counts 1 through 5 was $1,000,000 to $6,055,052.22. ROA.1068, citing 18 U.S.C. § 3571 (b), (d). For Count 6, the fine range was $500,000 to $6,055,052.22. ROA.1068, citing 18 U.S.C. § 3571(b). The suggested fine range for Counts 7 through 11 was $250,000 to $6,055,052.22. ROA.1068, citing 18 U.S.C. § 3571(b).

The court was required to impose a special assessment of $100 per count, for a total of $1,100. ROA.1068, citing 18 U.S.C. § 3013.

The PSR suggested restitution be ordered to the following parties in the following amounts:

U.S. Small Business Administration/DFC

| | |
|---|---|
| PPP Loan # 5505507207 | $259,134.00 |
| PPP Loan # 3813967404 | $500,000.00 |
| PPP Loan # 9871267804 | $834,200.00 |
| PPP Loan # 9993387008 | $599,900.00 |

21

Cross River Bank
PPP Loan #: 9048978010                         $834,292.11

ROA.1168-1169 (revised PSR).

Fullerton lodged 10 scoring objections and 8 non-scoring objections to the PSR. ROA.1077-1105. The Government filed a response in opposition. ROA.1110-1122. The Government also filed a sentencing memorandum. ROA.530-541.

At the sentencing hearing on October 4, 2024, Fullerton appeared before United States District Judge Pitman. ROA.931. Tiffany Fullerton was also sentenced during the same hearing.

The court first verified that Fullerton and his counsel had read and reviewed the PSRs. ROA.935. The court then heard and overruled Fullerton's several objections to the PSR. ROA.935-983. The court then reviewed the applicable sentencing guidelines and ranges in Fullerton's case. ROA.986-988. After hearing from Dr. Kumar Sathianathan, Fullerton, Fullerton's trial counsel and the Government, the court sentenced Fullerton to the following:

22

| Count | Term of Imprisonment | Term of Supervised Release (Concurrent) |
|---|---|---|
| Count 1: Conspiracy to Commit Wire and Bank Fraud | 262 months (concurrent with Counts 2-9) | 3 years |
| Count 2: Bank Fraud | 262 months (concurrent with Counts 1, 3-9) | 3 years |
| Count 3: Bank Fraud | 262 months (concurrent with Counts 1-2, 4-9) | 3 years |
| Count 4: Wire Fraud | 240 months (concurrent with Counts 1-3, 5-9) | 3 years |
| Count 5: Wire Fraud | 240 months (concurrent with Counts 1-4, 6-9) | 3 years |
| Count 6: Conspiracy to Commit Money Laundering | 240 months (concurrent with Counts 1-5, 6-9) | 3 years |
| Count 7: Engaging in Monetary Transactions in Criminally Derived Property | 120 months (concurrent with Counts 1-6, 8-9) | 3 years |
| Count 8: Engaging in Monetary Transactions in Criminally Derived Property | 120 months (concurrent with Counts 1-7, 9) | 3 years |
| Count 9: Engaging in Monetary Transactions in Criminally Derived Property | 120 months (concurrent with Counts 1-8) | 3 years |
| Count 10: Aggravated Identity Theft | 24 months (consecutive to Counts 1-9) | 1 year |
| Count 11: Aggravated Identity Theft | 24 months (consecutive to Counts 1-9; concurrent with Count 10) | 1 year |

23

ROA.881, 882-884, 1017-1018. The court assessed a $100 special assessment per count, for a total of $1,100. ROA.885, 1019. The court also ordered restitution of $3,027,526, as identified in the PSR. ROA.885-886, 1019. The court did not impose a fine. ROA.885, 1019.

This appeal follows. ROA.878.

## SUMMARY OF THE ARGUMENT

The district court clearly erred in finding that the sophisticated means enhancement of USSG § 2B1.1(b)(10)(C) applied in this case. Fullerton's actions in the commission of the offense were not complicated or otherwise sophisticated, and he did not use methods that made it difficult to detect the offenses.

The district court clearly erred in finding that the sophisticated means enhancement of USSG § 2S1.1(b)(3) applied in this case. Fullerton was not exclusively in the business of laundering funds, he was regularly engaged in laundering funds, did not engage in laundering funds for a lengthy period of time or even generate a substantial amount of revenue as proceeds.

The district court erred in enhancing Fullerton's sentence based the court erroneously finding Fullerton being a leader or organizer of a criminal activity involving five or more participants under USSG § 3B1.1(a). There were only four participants in the conspiracy.

The sentencing enhancement for obstruction of justice under USSG § 3C1.1 was not supported by an adequate independent finding by the district court that Fullerton committed perjury.

# ARGUMENT

## I.

**The district court clearly erred in finding that the sophisticated means enhancement of § 2B1.1(b)(10)(C) applied in this case.**

### A. Standard of Review

A district court's determination of whether an offense involved sophisticated means under USSG § 2Bl.l(b)(10)(C) is reviewed for clear error. *United States v. Clements*, 73 F.3d 1330, 1340 (5th Cir. 1996); *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013). This Court will not find a district court's ruling to be clearly erroneous unless it is left with the definite and firm conviction that a mistake has been made. *United States v. Charroux*, 3 F.3d 827, 836-37 (5th Cir. 1993); *Clements*, 73 F.3d at 1340; *Zuniga*, 720 F.3d at 590.

Fullerton's trial attorney filed an objection to the two-level enhancement for sophisticated means assessed in the PSR and maintained the objection at the sentencing hearing. ROA.1078-1079, 936-937. The district court overruled the objection. ROA.981. This issue was preserved for clear error review.

### B. Applicable Law

United States Sentencing Guideline § 2Bl.l(b)(10)(C) states: "If the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels." USSG § 2B1.1(b)(10)(C). The Application Note to Section 2B1.1 provides the following definition and examples for the term "sophisticated means":

> Sophisticated Means Enhancement under Subsection (b)(10)(C). – For purposes of subsection (b)(10)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

USSG § 2B1.1(b)(10)(C), Application Note 9.

Sophisticated means involves actions by the defendant that make it more difficult for the offense to be detected. *United States v. Valdez*, 726 F.3d 684, 695 (5th Cir. 2013). For instance, this Court has found sophisticated means were used where the defendant's deposits "obscure[d] the link between the money and ... himself" by making out numerous cashier's checks to himself, but depositing those checks into his wife's separate bank account. *Clements*, 73 F.3d at 134; *see also United States v. Conner*, 537 F.3d 480, 492 (5th Cir.2008) (enhancement applicable where defendant traveled to 23

27

different states to obtain information about credit accounts and used a fictitious name and business to conduct fraudulent transactions); *United States v. Wright*, 496 F.3d 371, 379 (5th Cir. 2007) (use of different names to avoid detection involved sophisticated means); *United States v. Charroux*, 3 F.3d 827, 837 (5th Cir. 1993) (land flip scheme to purchase property for inflated price involved sophisticated means).

In *United States v. Valdez*, however, this Court found that there was clear error in applying the sophisticated means enhancement. 726 F.3d at 687-88. In *Valdez*, the defendant performed medical procedures not covered by state and federal health insurance programs, but billed for procedures that were covered by these health insurance programs. *Id*. Valdez deposited some of the payments into his investment accounts directly from his operating account. *Id*. at 689, 695. The trial court applied the two-level enhancement, finding that Valdez employed sophisticated means because he was attempting to hide assets by depositing the proceeds into his investment accounts. This Court concluded that transferring funds from operating accounts to investment accounts that are all in the name of the defendant did not constitute sophisticated means. *Id*.

### A. The district court erred in finding the offense involved sophisticated means.

28

The record does not support the application of the two-level enhancement for sophisticated means in this case. There were not offshore accounts. There was no attempt to move money into untraceable assets; instead, boats, vehicles, a totorhome and a pot farm were purchased. There was no attempt to evade authorities.

Fullerton's actions in the commission of the offense were not complicated or otherwise sophisticated, and he did not use methods that made it difficult to detect the offenses. Rather, Fullerton completed loan applications and attached false documents, moved funds from one bank to another, and bought non-loan-intended property. These facts are most similar to those in *Valdez* and did not involve the use of sophisticated means. *Valdez*, 726 F.3d at 695.

### C. Not harmless error

This error was not harmless. An error in the calculation of the guideline range, such as here with a two-level increase in the range, is subject to a harmless error analysis. *United States v. Ibarra-Luna*, 628 F.3d 712, 713-14 (5th Cir. 2010). "[T]he harmless error doctrine applies only if the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing."

29

*Id*. at 714. To satisfy that high burden, there must be "evidence in the record that will convince us that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error." *Id*. at 718 (quoting *United States v. Huskey*, 137 F.3d 283, 289 (5th Cir. 1998)).

Here, the district court sentenced Fullerton to a guideline range sentence. ROA.881, 882-884, 1017-1018. If the district court had correctly calculated the guidelines, the offense level would have been 35 (evidencing the calculation without the sophisticated means), resulting in a guideline range of 210 months to 262 months. As this guideline range is below the sentences imposed on Counts 1 through 6, the guideline calculation error was not harmless.

## II.
### The district court clearly erred in finding that the sophisticated means enhancement of § 2S1.1(b)(3) applied in this case.

### A. Standard of Review

A district court's determination of whether an offense involved sophisticated means under USSG § 2Sl.l(b)(3) is reviewed for clear error. *Clements*, 73 F.3d at 1340; *Zuniga*, 720 F.3d at 590. This Court will not find a district court's ruling to be clearly erroneous unless it is left with the definite

and firm conviction that a mistake has been made. *Clements*, 73 F.3d at 1340; *Zuniga*, 720 F.3d at 590; *Charroux*, 3 F.3d at 836-37.

Fullerton's trial attorney filed an objection to the two-level enhancement for sophisticated conduct under § 2S1.1(b)(3) assessed in the PSR and maintained the objection at the sentencing hearing. ROA.1080-181, 938-939. The district court overruled the objection. ROA.981. This issue was preserved for clear error review.

## B. Applicable Law and Analysis

The definition of "sophisticated laundering" in § 2S1.1, Application Note 5 is almost identical to that of "sophisticated means" in § 2B1.1, Application Note 9.

It is clear from the language used that the PSR is referring to the same alleged sophisticated conduct by Fullerton to add two levels under § 2B1.1(b)(10)(C) ("the offense involved using sophisticated means") and to add another two levels under § 2S1.1(b)(3) ("the offense involved sophisticated laundering"). ROA.1038. This is error.

USSG § 2S1.1(b)(3) says that if the defendant was convicted under 18 U.S.C. § 1956 (which Fullerton was in Count 6) and the "offense involved sophisticated laundering," then the district court should increase the offense level by two levels.   However, this second two-level increase under

31

Guidelines § 2S1.1(b)(3) should not be applied where Fullerton already received a two-level increase under § 2B1.1(b)(10)(C) for the same conduct.

Note 5 in the Application Notes to Guidelines § 2S1.1 says that if the conduct that forms the basis for an enhancement under the guidelines for the underlying offense (in Fullerton's case, the two-level enhancement for "sophisticated means" under § 2B1.1(b)(10)(C)) is the only conduct that forms the basis for the application of § 2S1.1(b)(3), i.e., the additional two-level enhancement for "sophisticated laundering" under § 2S1.1(b)(3), then the two-level enhancement under § 2S1.1(b)(3) should not be applied. USSG § 2S1.1, Application Note 5. This note makes sense and applies in this situation. Otherwise, Fullerton would receive a two-level enhancement twice – under each of the two Guidelines sections – for the same alleged sophisticated conduct. Cf. *United States v. Reyes*, 781 F. App'x 965, 969 (11th Cir. 2019) (unpublished) (per curiam) (Application Note 5(B) "is designed to prevent a defendant from receiving the same enhancement both for the underlying offense and for the sophisticated laundering." ); *United States v. Mehmood*, 742 F. App'x 928, 943 (6th Cir. 2018) (unpublished) (analyzing double counting of enhancements, not underlying charged offense); *United States v. Rubashkin*, 718 F. Supp. 2d 953, 977 n.14 (N.D. Iowa 2010) (same).

There was no evidence before the district court of some other "sophisticated laundering" that was different from the evidence of Fullerton's alleged using "sophisticated means" in § 2B1.1(b)(10)(C).

Moreover, the record does not support the application of the two-level enhancement for sophisticated laundering in any case. Fullerton was not exclusively in the business of laundering funds, he was regularly engaged in laundering funds, did not engage in laundering funds for a lengthy period of time or even generate a substantial amount of revenue as proceeds. There was no use of fictitious entities, shell corporations, multiple transactions, or even offshore accounts.  here was no attempt to evade authorities.

Therefore, the district court erred in adopting this prohibited second two-level enhancement for the same sophisticated conduct.

## C. Not Harmless Error

Like discussed above, this error is not harmless. If the district court had correctly calculated the guidelines, the offense level would have been no higher than 35 (evidencing the calculation without the sophisticated laundering), resulting in a guideline range of 210-262 months. As this guideline range is below the sentences imposed on Counts 1 through 6, the guideline calculation error was not harmless.

**III.**

**The district court erred in enhancing Fullerton's sentence based on an erroneous finding that Fullerton was a leader or organizer of a criminal activity involving five or more participants under § 3B1.1(a).**

### A. Standard of Review

A district court's determination of whether the leader/organizer enhancement applies under USSG § 3B1.1(a) is reviewed for clear error. *Clements*, 73 F.3d at 1340; *Zuniga*, 720 F.3d at 590. This Court will not find a district court's ruling to be clearly erroneous unless it is left with the definite and firm conviction that a mistake has been made. *Clements*, 73 F.3d at 1340; *Zuniga*, 720 F.3d at 590; *Charroux*, 3 F.3d at 836-37.

Fullerton's trial attorney filed an objection to the four-level enhancement assessed in the PSR and maintained the objection at the sentencing hearing. ROA.1083-1090, 938-940. The district court overruled the objection. ROA.982. This issue was preserved for clear error review.

### B. Applicable Law

The Sentencing Guidelines apply a four-level enhancement if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). A "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.1, Application

34

Note 1. The Government must prove participants' involvement by a preponderance of reliable evidence. *United States v. Martinez*, 131 F.4th 294, 320 (5th Cir. 2025) (citing *United States v. Gentry*, 941 F.3d 767, 788 (5th Cir. 2019)). There are several factors for the courts to consider when making the "organizer or leader" evaluation: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature a scope of the illegal activity; and (7) the degree of control and authority exercised over others. USSG § 3B1.1, Application Note 4.

### C. The district court erred in finding five or more participants.

The district court, in adopting the PSR, found that Fullerton led a conspiracy involving five or more participants. ROA. 1139, 1186. This was clear error, as the record supports only four criminally responsible participants: Michael Fullerton, Tiffany Fullerton, Joseph Robles, and David Scott Starkes.[1]

---

[1] Tiffany Fullerton was convicted of Attempt and Conspiracy to Commit Mail Fraud as well as of Money Laundering and was sentenced to 108 months in prison, followed by 3 years supervised release. She was ordered to pay restitution in the amount of $3,027,536.11. Her appeal is pending in case no. 24-50829.

The Government contended below that T.G. played a knowingly role in the conspiracy and points to Fullerton's admissions in the Agreed Factual Basis for Guilty Plea as support for its position. Specifically, it points to this paragraph:

> In the spring of 2020, due to the economic difficulty caused by the COVID-19 pandemic, DEFENDANT and Starkes decided to apply for a PPP loan for Starx Investment Holdings to help with the costs of operating Georgetown Collision. DEFENDANT and an employee, T.G., entered false and fraudulent information into QuickBooks and EZ Checks in order to generate false tax records like W-2s, W-3s, Forms 940, and Forms 941, and false employment reports, to support at least one PPP loan application. DEFENDANT knew this information was false and fraudulent and knew it would be submitted with at least one PPP loan application.

ROA.486-487. This paragraph in and of itself does not establish that T.G. was knowingly engaging in criminal activity to make herself a willing participant. If anything, the paragraph in concert with the entire Factual Basis reads that Fullerton provided false and fraudulent information to T.G., who was just an office employee, to input into a computer program at Fullerton's direction. Beyond that, the PSR provides limited evidence of her active criminal

---

David Scott Starkes was convicted of Money Laundering and was sentenced to 70 years in prison, followed by 3 years of supervised release. He was ordered to pay restitution in the amount of $2,502,756.99.

Joseph Robles was convicted of Money Laundering and was sentenced to 5 years' probation. He was ordered to pay $1,668,492.11 in restitution.

No other individuals were charged or convicted in this scheme.

36

involvement in the conspiracy. Computer data entry does not make a conspiracy participant.

This Court has rejected participant status absent evidence of criminal involvement. See, e.g., *United States v. Lewis*, 476 F.3d 369, 377 (5th Cir. 2007) (mere association insufficient); *United States v. Cisneros*, 414 Fed. Appx. 696, 703 (5th Cir. 2011) (unpublished) (vacating sentence imposed because mere fact defendant called other co-conspirators does not indicate he was their supervisor). An employee performing data entry, without more, should not be count a participant in the criminal conspiracy. The district court's finding on this enhancement is not plausible and should be vacated.

## IV.
**The enhancement for obstruction of justice was not supported by an adequate independent finding by the district court that Fullerton committed perjury.**

### A. Standard of Review

A district court's finding under USSG § 3C1.1 that the defendant obstructed justice is a factual finding reviewed for clear error. *United States v. Edwards*, 303 F.3d 606, 645-646 (5th Cir. 2002).

Fullerton's trial attorney filed an objection to the two-level enhancement assessed in the PSR for objection of justice as well as the exclusion of acceptance responsibility points under USSG 3E1.1 for the same

37

reasoning. ROA.1095-1098, 940-944. The district court overruled the objection. ROA.98-983. This issue was preserved for clear error review.

### B. Applicable Law and Analysis

USSG § 3C1.1 provides for a two-level increase if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." *United States v. Storm*, 36 F.3d 1289, 1295 (5th Cir.1994) (citing U.S.S.G. § 3C1.1). "If a district court finds that a defendant has committed perjury at trial, an enhancement is required under section 3C1.1." *Id*.

Perjury occurs when a witness (1) testifies under oath or affirmation, (2) gives false testimony concerning a material matter, and (3) does so "with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). Testimony is "material" which, "if believed, would tend to influence or affect the issue under determination." *Storm*, 36 F.3d at 1297. If the defendant objects to a sentence adjustment for perjury, the district court must make independent findings that the defendant committed perjury. *See United States v. Como*, 53 F.3d 87, 89 (5th Cir. 1995). "The finding is sufficient . . . if the court makes a finding of

38

an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." *Storm*, 36 F.3d at 1295.

Believing Fullerton's testimony at Tiffany Fullerton's trial amounted to the commission of perjury, the district court applied the two-level increase for objection of justice under USSG § 3C1.1. At the sentencing hearing, the court stated the following:

> With regard to obstruction of justice, I think I've indicated my orientation already on this and that is that although Mr. Fullerton got right up to the line and did everything right by accepting responsibility, debriefing, and then, pleading guilty, it was all for naught when he took the stand and under oath, engaged in hour after hour of lies that were demonstrably false. And so, I find that he both obstructed justice by doing so, it was part of a plan that he had early on in this scheme to take responsibility, and he made the decision that that was -- he did so at the risk of really losing all of the benefit of his conduct after that point and accepting responsibility.

> And so, having obstructed justice, having committed perjury, he both obstructed justice within the meaning of the guidelines and, obviously, he failed to accept responsibility and is not eligible for any consideration on that count.

ROA.982-983.

Unfortunately, nowhere in the PSR or the court's oral findings did the court set forth specifics where Fullerton is alleged to have perjured himself during this trial testimony. The lack of specific findings of points of perjury in either the PSR or the court's oral rulings equal just unsupported

39

conclusionary statements. Without the specific findings, Fullerton is not in a position to negate falsity or materiality of specific points of testimony.

Fullerton submits that he might have made conflicting statements at trial from those made to investigators, but those differences do not necessarily rise to perjury. As Fullerton's trial attorney pointed out, Fullerton thought he was doing the right thing by talking to investigators and then testifying at trial and Fullerton obviously met his match with a very experienced federal prosecutor. ROA.943.

Without specific findings as to alleged false statements or testimony by Fullerton, the district court's findings are inadequate to support the § 3C1.1 obstruction enhancement.

The Fifth Circuit in *United States v. Humphrey*, 7 F.3d 1186, 1190 (5th Cir. 1993), vacated a defendant's sentence finding the district court had an obligation to make a finding on whether perjury had been committed when the government objected to the presentence report's failure to recommend the obstruction of justice enhancement. *Id*. at 1190. This Court stated that "[i]mplicit in the [] right to object to guideline determinations, and our obligation to review those determinations, is the district court's obligation to make all factual findings necessary to establish the basis for its decisions." *Id*.

40

In *Storm*, the defendant argued in part that the district court did not make specific findings. The Fifth Circuit rejected that argument because, there the district court said the false testimony related to the involvement of another individual (Christianson) in the real estate scheme. *Storm*, 36 F.3d at 1297. Here, the district court did not elucidate in any fashion those testimonial statements that were both false and material, amounting to perjury.

Because the district court did not make the necessary findings preliminary to its determination that Fullerton had obstructed justice within the meaning of § 3C1.1, Fullerton's sentence should be vacated.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the district court's judgment and sentence in this case should be vacated and remanded for resentencing.

Respectfully submitted,

By: /s/ Susannah E. Prucka
SUSANNAH E. PRUCKA

Prucka Law Firm
3204 Sunburst Drive
Midland, Texas 79707
(432) 303-1509
susannah@pruckalawfirm.com

Attorney for Defendant-Appellant
Michael Fullerton

41

## **CERTIFICATE OF SERVICE**

I certify that today, August 7, 2025, the foregoing brief and its appendix were served upon Assistant United States Attorney Zachary C. Richter and Stephanie Frederique Cagniart, counsel for Appellee, by notice of electronic filing with the Fifth Circuit CM/ECF system.

By: /s/ Susannah E. Prucka
SUSANNAH E. PRUCKA

# **CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9263 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

3.     This brief was filed electronically, in native Portable Document File (PDF) format, via the Fifth Circuit's CM/ECF system.


By: /s/ Susannah E. Prucka
SUSANNAH E. PRUCKA